IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |
|---|---|
| GERSHWAIN SPRAUVE, | : |
|  | : Civil Action No. 13-08 (SDW) |
| Plaintiff, | : |
| v. | : |
|  | : **OPINION** |
| THE WEST INDIAN COMPANY LIMITED, and JOSEPH BOSCHULTE in his personal capacity, the BOARD OF DIRECTORS OF THE WEST INDIAN COMPANY LIMITED, and JOSEPH BOSCHULTE, as PRESIDENT and CHIEF EXECUTIVE OFFICER OF THE WEST INDIAN COMPANY LIMITED, | :  October 8, 2013 |
| Defendants. | : |

**WIGENTON**, District Judge.

Before the Court is The West Indian Company Limited ("WICO") and Joseph Boschulte's ("Boschulte") (collectively "Defendants") Motion to Dismiss Gershwain Sprauve's ("Plaintiff") Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and Defendants' Motion to Quash pursuant to Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5). Venue is proper pursuant to 28 U.S.C. § 1391(b). This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, this Court **GRANTS** Defendants' Motion to Dismiss and Motion to Quash.

**FACTUAL HISTORY**

On April 1, 1997, Plaintiff began working at WICO as the Manager of Mall Operations. (Compl. ¶¶ 13-14.) The WICO Board of Directors ("WICO Board") appointed Plaintiff to be the WICO Corporate Secretary. (Id. ¶ 14.) Throughout his career at WICO, Plaintiff received

1

exemplary performance reviews and several raises, along with cash bonuses due to his performance. (Id. ¶ 15.)

In February 2010, Plaintiff applied for the position of WICO's President and Chief Executive Officer ("CEO")—a job opening that was not publicly advertised—as the presiding CEO was scheduled to retire on December 31, 2010. (Id. ¶¶ 17-18.) On March 17, 2010, the WICO Board unanimously accepted Plaintiff's application for the position. (Id. ¶ 18.) The Board discussed a six-month transition period for Plaintiff and planned to have a draft contract by June 2010. (Id.) In the following months, no steps were initiated to transition Plaintiff into the President and CEO position, and no contract was drafted. (Id. ¶¶ 19, 23.)

On December 15, 2010, the WICO Board held a meeting and announced that WICO had not yet hired a replacement President and CEO, and they extended the outgoing President and CEO's contract. (Id. ¶ 20.) At this meeting, Plaintiff was asked to consider the newly-created Chief Operating Officer ("COO") position. (Id.) Two days later, Plaintiff wrote a letter to the WICO Board "express[ing] his frustration with the WICO Board's inability to act on the promises that were made to him at the March 2010-WICO Board meeting" and requesting further information about the COO position. (Id. ¶ 21.) On January 21, 2011, Plaintiff was informed by a WICO Board member that due to external factors, no new President and CEO had been selected and there was no guarantee that Plaintiff would be chosen for the position. (Id. ¶ 22.)

At a June 15, 2011 WICO Board meeting, Plaintiff was offered the Acting President position. (Id. ¶ 23.) On June 16, 2011, Plaintiff withdrew his application for WICO President and CEO. (Id.) On June 17, 2011, the outgoing President and CEO sent an email to the WICO Board recommending Plaintiff to be his successor. (Id.) On December 12, 2011, after the WICO President and CEO position was publicly advertised, Plaintiff resubmitted his application to be

considered for the position. (Id. ¶ 24.) Plaintiff was interviewed for the position; however, he was not selected. (Id.) On March 13, 2012, the WICO Board announced that it had chosen Boschulte to be the new WICO President and CEO. (Id.)

On May 1, 2012, Boschulte began working in the capacity of President and CEO of WICO. (Id. ¶ 25.) Soon after, Plaintiff claims that he received "open hostility" from Boschulte. (Id.) For instance, in June 2012, Boschulte allegedly accused Plaintiff of not updating him about a paving project although Plaintiff had sent him a detailed report regarding the project hours before. (Id.) Additionally, at a July 25, 2012 WICO Board meeting, Boschulte allegedly accused Plaintiff of making permanent changes on the property without first consulting him. (Id. ¶ 28.) Plaintiff claims that Boschulte accused him of "being insubordinate during the meeting" and "falsely noted in his written reprimand that Plaintiff refused to accept '[his] position that [if there are] any structural changes on the property, [he is to] be notified.'" (Id.)

After the meeting, Plaintiff provided a memorandum to the WICO Board complaining about his unpleasant encounter with Boschulte. (Id. ¶ 29.) Plaintiff stated that Boschulte's unprofessional attitude and his use of inappropriate language to staff created a hostile work environment. (Id.) Plaintiff claims that the WICO Board reprimanded him for drafting the memorandum and not following WICO's Employee Handbook that required any concerns to be reported to the WICO Human Resources Office. (Id. ¶ 30.)

In August 2012, Boschulte sent an email to Plaintiff requesting him to prepare materials related to a hearing before the Virgin Islands Legislature's Committee on Finance, but Plaintiff was not asked to attend the meeting. (Id. ¶ 31.) On August 31, 2012, Boschulte sent Plaintiff a letter terminating his position as COO effective immediately for failure to attend the hearing and "failure to perform the duties expected in [his] position at WICO," among other things. (Id. ¶ 32.)

Plaintiff alleges that WICO did not hold a hearing before terminating him and that he was not aware of the accusations against him until he received the termination letter. (Id. ¶ 32.)

Less than one week after Plaintiff was terminated, he was removed from WICO's group health insurance program and Plaintiff was not given his last paycheck until approximately one month post-termination. (Id. ¶ 33.) Plaintiff alleges that he was retaliated against by Boschulte for reporting his inappropriate language at work. (Id. ¶ 35.) Plaintiff further alleges he was "singled out and terminated for allegedly failing to attend the hearing." (Id. ¶ 36.)

**PROCEDURAL HISTORY**

On October 4, 2012, Plaintiff filed an appeal of discrimination under 3 V.I.C. § 531 with the Government of the Virgin Islands, Public Employees Relations Board ("PERB") against WICO. Sprauve v. WICO, PERB-GSA-13-01T, at 1 (Apr. 24, 2013), (Defs.' Exh. 3). On November 20, 2012, PERB issued an Order of Referral to Mediation to the parties. Id. Plaintiff's appeal was dismissed for lack of jurisdiction. Id. at 5.

On January 28, 2013, Plaintiff filed a Complaint in this Court alleging the following counts: (I) First Amendment Claim; (II) Fourteenth Amendment Claim; (III) Virgin Islands Wrongful Discharge Claim; (IV) Breach of Contract Claim; (V) Defamation Claim; (VI) Prima Facie Torts Claim; (VII) 42 U.S.C. § 1983 Claim; (VIII) Tortious Interference with Contract Claim; (IX) Intentional Infliction of Emotional Distress Claim; (X) Negligent Hiring and Supervision Claim; (XI) Breach of Covenant of Good Faith and Fair Dealing Claim; (XII) Civil Conspiracy; (XIII) Misrepresentation and Fraud Claim; (XIV) Failure to Promote Claim; (XV) Equal Protection Claim; (XVI) 42 U.S.C. 1983 Equal Protection Claim; and (XVII) Violation of Employee Handbook Claim. (Dkt. No. 1.) On March 11, 2013, WICO and Boschulte—in both his personal and official capacity as CEO of WICO—filed the instant Motion to Dismiss. (Dkt. No. 14.)

Plaintiff opposed the Motion on April 18, 2013, and Defendants—and Boschulte in his personal capacity—replied on May 9, 2013. (Dkt. Nos. 17, 21, 22.)

**LEGAL STANDARD**

*Motion to Dismiss Under Rule 12(b)(1)*

A defendant may move to dismiss claims for lack of subject matter jurisdiction pursuant to Federal Rule 12(b)(1). See FED. R. CIV. P. 12(b)(1). In a Rule 12(b)(1) motion, no presumption of truthfulness attaches to plaintiff's claims, and disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims. See Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977). The plaintiff bears the burden to establish subject matter jurisdiction. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994) (citing McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936)).

*Motion to Dismiss Under Rule 12(b)(4)*

A defendant may move to dismiss for "insufficient process" pursuant to Federal Rule 12(b)(4). FED. R. CIV. P. 12(b)(4). When considering a 12(b)(4) motion to dismiss,"[d]istrict courts possess broad discretion." Jarvis v. Gov't of V.I., No. 07-117, 2009 WL 367727, at *3 (D.V.I. Feb. 12, 2009) (citing Umbenhauer v. Woog, 969 F.2d 25, 30-31 (3d Cir. 1992)). If a summons fails to properly name the parties pursuant to Rule 4(a), it is void. See Ayres v. Jacobs & Crumplar, P.A., 99 F.3d 565, 569 (3d Cir. 1996) (explaining that a mistake in the use of Rule 4 "'can be fatal'" (quoting FED. R. CIV. P. 4 cmt. C4-1)). "[T]he failure of a plaintiff to obtain valid process from the court to provide it with personal jurisdiction over the defendant in a civil case is fatal to the plaintiff's case." Ackerman v. Beth Isr. Cemetery Ass'n, No. 09-1097, 2010 WL 2651299, at *3 (D.N.J. June 25, 2010) (internal citation and quotation marks omitted).

5

*Motion to Dismiss or Quash Under Rule 12(b)(5)*

A defendant may move to dismiss for "insufficiency of service of process" pursuant to Federal Rule 12(b)(5). FED. R. CIV. P. 12(b)(5). In a Rule 12(b)(5) motion, the party effecting service "'has the burden of demonstrating validity when an objection to the service is made.'" Cruz v. Matthews, No. 2007-40, 2011 WL 797663, at *1 (D.V.I. Feb. 28, 2011) (quoting Suegart v. U.S. Customs Serv., 180 F.R.D. 276, 278 (E.D. Pa. 1998)); see also Grand Entm't Grp., Ltd. v. Star Media Sales, Inc., 988 F.2d 476, 488 (3d Cir. 1993) ("[T]he party asserting the validity of service bears the burden of proof on that issue."). When a named defendant "has not been properly served . . . district courts possess broad discretion to either dismiss the plaintiff's complaint for failure to effect service or to simply quash service of process." Umbenhauer, 969 F.2d at 30. If it is possible that service can properly be obtained, dismissing plaintiff's complaint would be inappropriate. Id. However, where there is no showing of "a reasonable prospect that service by alternate means could be effected[,]" dismissal of the complaint is appropriate. Richardson v. Ingram Corp., 374 F.2d 502, 503 (3d Cir. 1967).

*Motion to Dismiss Under Rule 12(b)(6)*

The adequacy of pleadings is governed by Fed. R. Civ. P. 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . . Factual allegations must be enough to raise a right to relief above the speculative level." Twombly., 550 U.S. at 555 (internal citation omitted); see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (stating that "Rule 8 requires a showing, rather than

6

a blanket assertion, of entitlement to relief" (quoting Twombly, 550 U.S. at 555 n.3) (internal quotation marks omitted)).

In considering a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips, 515 F.3d at 233 (quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "'that the pleader is entitled to relief'" as required by Rule 8(a)(2). Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

According to the Supreme Court in Twombly, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555 (second alteration in original) (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." Phillips, 515 F.3d at 234 (alterations in original) (quoting Twombly, 550 U.S. at 556).

In Fowler v. UPMC Shadyside, the Third Circuit directed district courts to conduct a two-part analysis. 578 F.3d 203, 210 (2009). First, the court must separate the factual elements from

7

the legal conclusions. See id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11 (citing Iqbal, 556 U.S. at 678). Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 566 U.S. at 679). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips, 515 F.3d at 234-35).

**DISCUSSION**

**I.     Public Versus Private Status of WICO and its Employees**

The first and central issue raised in the instant Motion to Dismiss is whether WICO is a public corporation with public employees versus a private entity with private employees. Whether this Court has jurisdiction over this matter turns on this issue. Based on the parties' and Court's review, there is no case law in this District addressing WICO's status as a private or public corporation or whether WICO employees are considered "public employees." However, this issue has been considered by the Public Employees Relations Board ("PERB")—the administrative agency charged with enforcing statutory guidelines regarding Public Employee Labor Relations. See 24 V.I.C. § 361 ("It is the purpose of this [Public Employee Labor Relations] chapter to provide for orderly and constructive relationships between public employers and their employees."); see generally 24 V.I.C. § 365(a).

**A. PERB Authority**

It is well-settled that "[t]he interpretation of a statutory scheme by the administrative agency charged with its enforcement is entitled to great deference." Abramson v. Georgetown Consulting Grp., Inc., 765 F. Supp. 255, 259 (D.V.I. 1991) (citing Equal Emp't Opportunity Comm'n v. Associated Dry Goods Corp., 449 U.S. 590, 600 n.17 (1981)), aff'd sub nom.

8

Abramson v. Madan, 952 F.2d 1391 (3d Cir. 1991); see N.L.R.B. v. Boeing Co., 412 U.S. 67, 74-75 (1973); Westinghouse Elec. Corp. v. U.S. Nuclear Regulatory Comm'n, 555 F.2d 82, 91 n.44 (3d Cir. 1977). Moreover, the Third Circuit Court has directed courts "'to regard as controlling a reasonable, consistently applied administrative interpretation.'" Id. (quoting N. Ind. Pub. Serv. Co. v. Porter Cnty. Chapter of Izaak Walton League, Inc., 423 U.S. 12, 15 (1975)).

In two recent decisions, UIW-SIU/Browne & Challenger v. WICO and Sprauve v. WICO, PERB addressed whether WICO employees are considered "public employees" under 24 V.I.C. § 362(g). See UIW-SIU/Browne & Challenger v. WICO, PERB-ULPC-12-14-T, at 6 (Jan. 31, 2013), (Defs.' Exh. 2); Sprauve v. WICO, PERB-GSA-13-01T, at 4-5 (Apr. 24, 2013), (Defs.' Exh. 3); 24 V.I.C. § 362(g). In UIW-SIU/Browne, PERB noted that the "law clearly states that a public employee must be a person holding a position by appointment in the service of a public employer." PERB-ULPC-12-14-T at 7. PERB concluded that WICO employees were not "public employees" because WICO operated as a private corporation, its employees were hired by WICO management and not through appointment by the Division of Personnel, and WICO employees did not participate in the Government Employees' Retirement System. Id. at 6-7. Similarly, in Sprauve v. WICO, PERB concluded WICO employees are not government or public employees. PERB-GSA-13-01T at 5.

At bottom, in both decisions, PERB determined that WICO employees do not fall within the statute's meaning of "public employees." UIW-SIU/Browne, PERB-ULPC-12-14-T at 7; Sprauve, PERB-GSA-13-01T at 5. In light of such determination, PERB declined jurisdiction over the WICO employees. See UIW-SIU/Browne, PERB-ULPC-12-14-T at 7-8, (Defs.' Exh. 2); Sprauve, PERB-GSA-13-01T at 5, (Defs.' Exh. 3).

### B. Act No. 5826 of the Virgin Islands Legislature

Of relevant consideration is that the Government of the Virgin Islands purchased shares of WICO in 1993 pursuant to Act No. 5826 of the Virgin Islands Legislature. Per Section 8(b) of Act No. 5826, WICO was "granted the status and authority of a public corporation and governmental instrumentality of the Government of the Virgin Islands of the United States and [was] deemed to be a public entity operating on behalf of the Government, rather than a private corporation." Act No. 5826 § 8. Plaintiff argues that WICO was granted public status by virtue of Act No. 5826. (Pl.'s Opp'n 7.) However, Defendants argue that WICO enjoys "special dual status" as both a public and private entity. (Defs.' Br. 3.) Defendants acknowledge language in Act No. 5826 which confers benefits to WICO as a public corporation such that it is "not . . . required to pay any taxes or assessments on any of the property acquired or to be acquired by it, or on its operations or activities, or on the income derived from any of its operations or activities." Act No. 5826 § 8; (Defs.' Br. 3.) Nevertheless, Defendants assert that WICO otherwise functions as a private corporation under the laws of the Virgin Islands, as authorized by Act No. 5826. See Act No. 5826 § 4; (Defs.' Br. 4.)

### C. Analysis of WICO Status

Based on the record and relevant authority, this Court finds that WICO cannot be considered a purely public entity. It is clear that WICO has been granted certain benefits and characteristics of a public entity. For instance, since 1993, WICO has enjoyed the tax benefits conferred by Act No. 5826 when the Government of the Virgin Islands bought shares of the company. This alone, however, does not exemplify the characteristics of a public corporation. To the contrary, WICO appears to function as a private corporation, as permitted by the Act. See Act No. 5826 § 8 (noting that WICO could continue "to undertake any act or activity permitted under

the Company Charter and permissible for a general business corporation under the general corporation laws of the Virgin Islands"). For example, WICO's employees are not beneficiaries of the Government Employees' Retirement System. Furthermore, there is no indication that WICO employees are given appointed positions in the service of a public employer. Consistent with PERB's recent decisions, this Court finds that WICO employees are not "public employees." Additionally, as WICO is not a purely public entity, it will not be deemed a "public corporation."

## II.    Jurisdiction

Federal courts can only adjudicate matters where subject matter jurisdiction exists, and without such jurisdiction, a court must decline to entertain the lawsuit. See Airlines Reporting Corp. v. Belfon, No. 2003/146, 2010 WL 3664065, at *12 (D.V.I. Sept. 16, 2010). Plaintiff claims that this Court has jurisdiction in this matter pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343(a)(3), 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367. (See Compl. ¶ 3.) As discussed below, this Court finds that none of these bases confer jurisdiction in this matter.

### A. Jurisdiction Under 28 U.S.C. § 1983 (Counts VII and XVI)

To establish jurisdiction under 28 U.S.C. § 1983, a constitutional violation must have occurred. See Gibbs v. Turnbull, No. 1999-0061, 2008 WL 2917824, at *2 (D.V.I. July 24, 2008) ("Without a constitutional violation, a 42 U.S.C. § 1983 action cannot stand.") (citing Deary v. Evans, 570 F. Supp. 189, 197 (D.V.I. 1983)). When evaluating a § 1983 claim, the court must conduct an inquiry as to whether the party against whom the claim is asserted is "acting under color of state law." D'Aurizio v. Palisades Park, 963 F. Supp. 387, 392 (D.N.J. 1997) (quoting Groman v. Twp. of Manalapan, 47 F.3d 628, 638 n.15 (3d Cir. 1995)) (internal quotation marks omitted). "Where the actors are not state or municipal officials, but are private individuals . . . [a court] still must address whether their activity can nevertheless be deemed to be under color of

11

law." Groman, 47 F.3d at 638. A private party acting in concert with a state agency or official may be acting under color of state law. See D'Aurizio, 963 F. Supp. at 392. "However, a private action 'is not converted into one under color of state law merely by some tenuous connection to the state action. The issue is not whether the state was involved in some way . . . but whether the action taken can be fairly attributed to the state itself.'" Id. (quoting Groman, 47 F.3d at 638-39).

This Court has concluded that WICO is a private entity and Boschulte is a private employee. Plaintiff has not alleged that Defendants acted in concert with any state agency or official. Because Defendants were not acting "under color of state law," Plaintiff's § 1983 claims in Counts VII and XVI fail. See Muniz v. Spevack, No. Civ. 05-2370, 2006 WL 208571, at *3 (D.N.J. Jan. 25, 2006) (dismissing § 1983 claims against a private person for lack of subject matter jurisdiction). As Plaintiff fails to assert any viable § 1983 claims, this Court does not have subject matter jurisdiction under 42 U.S.C. § 1983.

### B. Jurisdiction Under 28 U.S.C. § 1343(a)(3)

Pursuant to 28 U.S.C. § 1343(a)(3), federal courts have jurisdiction over civil rights claims; however, the statute does not "create a cause of action in and of itself." Eddy v. V.I. Water & Power Auth., 961 F. Supp. 113, 115 (D.V.I. 1997). Instead, "section 1343(a)(3) 'is the jurisdictional counterpart' of the substantive law contained in section 1983." Id. (quoting Chapman v. Hous. Welfare Rights Org., 441 U.S. 600, 613 (1979)). Thus, this Court will only have jurisdiction under section 1343(a)(3) if plaintiff's complaint states a valid § 1983 claim. See Payton v. Pub. Defender Admin. Bd., No. 2006-98, 2007 WL 309946, at *3 (D.V.I. Jan. 22, 2007) (noting that section 1343(a)(3) is only a jurisdictional grant to provide "subject matter jurisdiction over claims 'based on alleged violations of provisions of the federal Constitution that secure rights

against those who act under color of state law and over claims arising from federal statutes'" that protect equal rights) (quoting Eddy, 961 F. Supp. at 115).

As Plaintiff's § 1983 claims are dismissed, there is no subject matter jurisdiction under 28 U.S.C. § 1343(a)(3).

### C. Jurisdiction Under 28 U.S.C. § 1331

Section 1331 provides for jurisdiction of civil claims "arising under" federal law. 28 U.S.C. § 1331. A court should not exercise jurisdiction over a claim that does not "arise under" federal law when the plaintiff could proceed solely on state-law claims. Gardiner v. St. Croix Dist. Governing Bd. of Dirs., 859 F. Supp. 2d 728, 735-36 (D.V.I. 2012) ("[F]ederal jurisdiction should not be exercised over a state-law claim when the Complaint provides independent state and federal-law theories."), (citing Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 810 (1988)); see Bauchelle v. AT&T Corp., 989 F. Supp. 636, 641 (D.N.J. 1997) ("[W]here [p]laintiff's causes of action are created by state law . . . there is no federal jurisdiction over the matter.").

Here, Plaintiff's remaining allegations that may satisfy § 1331 for jurisdictional purposes are alleged violations of the First Amendment and Fourteenth Amendment.

#### 1. Plaintiff's First Amendment Claim (Count I)

In the employment context, the First Amendment applies only to "state actions" that concern public employees. See Urgent v. Hovensa, LLC, No. 2006/0105, 2008 WL 4526677, at *7 (D.V.I. Oct. 2, 2008). Similarly, "the First Amendment applies only to public employers." Fogarty v. Boles, 121 F.3d 886, 890 (3d Cir. 1997). In Urgent, the plaintiff's First Amendment claim was dismissed because the defendant was "a private employer rather than a state actor and its actions . . . [did] not constitute state action under the law." 2008 WL 4256677, at *7. Additionally, the Third Circuit has declined to read the First Amendment so broadly as to create

13

"limitations on employers' discretion to fire at-will employees." Fraser v. Nationwide Mut. Ins. Co., 352 F.3d 107, 112 (3d Cir. 2003).

This Court has determined that WICO is not a public entity and its employees are not "public employees." As a result, Plaintiff's First Amendment claims against Boschulte or WICO are not viable and thus dismissed.[1]

### 2. Fourteenth Amendment Claims (Counts II and XV)

A Fourteenth Amendment due process violation requires an inquiry as to whether "state action" existed in order to constitute such a violation. Lugar v. Edmondson Oil Co., 457 U.S. 922, 924 (1982) ("Because the Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"). This inquiry under the Fourteenth Amendment is "identical in most contexts" to the "under color of state law" inquiry under 42 U.S.C. § 1983. Groman, 47 F.3d at 638 n.15 (citing Robison v. Canterbury Village, Inc., 848 F.2d 424, 427 n.3 (3d Cir. 1988)); see also Lugar, 457 U.S. at 928 (noting that this was stated explicitly by the Supreme Court: "In cases under § 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment" (quoting United States v. Price, 383 U.S. 787, 794 n.7 (1966))).

As previously concluded, WICO is not a public entity and its employees are not public employees. Thus, Plaintiff's Fourteenth Amendment Due Process claims against WICO and Boschulte in his capacity as President and CEO of WICO fail because these Defendants are private actors. Furthermore, even as private actors, Plaintiff's Fourteenth Amendment claim fails against all Defendants, including Boschulte in his personal capacity, because the Defendants were not participating in "joint activity" with the Government of the Virgin Islands or any state actor. Even

---

[1] Because Plaintiff is not a public employee, this Court does not address the sufficiency of Plaintiff's First Amendment retaliation claim.

if Plaintiff was fired based upon a Virgin Islands statute, Plaintiff's claim would still fail. See Lugar, 457 U.S. at 938-39. Accordingly, Plaintiff's Fourteenth Amendment claims must be dismissed.

Because Plaintiff fails to assert a viable claim arising under federal law, this Court does not have jurisdiction under 28 U.S.C. § 1331.

### D. Supplemental Jurisdiction over Plaintiff's State Law Claims Under 28 U.S.C. § 1367 (Counts III-VI, VIII-XIV, and XVII)

Under 28 U.S.C. § 1367, federal courts can exercise jurisdiction over state law claims. § 1367(a). However, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966); see Stehney v. Perry, 907 F. Supp. 806, 825 (D.N.J. 1995) ("[A] federal district court may decline to exercise its supplemental jurisdiction over state law claims if all federal claims are dismissed."); Washington v. Specialty Risk Servs., No. 12-cv-1393, 2012 WL 3528051, at *2 (D.N.J. Aug. 15, 2012) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims." (alterations in original) (quoting Hedges v. Musco, 204 F.3d 109, 123 (3d Cir. 2000)) (internal quotation marks omitted).

In the instant matter, this Court has dismissed all of Plaintiff's claims arising under federal law. This Court declines to exercise supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. Plaintiff's state law claims are thus dismissed without prejudice.

### III. Service of Process

Pursuant to Federal Rule of Civil Procedure 17(b)(2), the "[c]apacity to sue or be sued . . . for a corporation, [is determined] by the law under which it was organized." FED. R. CIV. P. 17(b)(2). According to Virgin Islands law, a board of directors cannot sue other parties or be sued

by another party in its own capacity because it "is not a suable entity." Bd. of Dirs. of Shibui v. McGuire, No. 302/1978, 1979 WL 447867, at *3 (Terr. V.I. May 30, 1979) (noting that "the board of directors . . . is not the real party in interest); see also Heslep v. Ams. for African Adoption, Inc., 890 F. Supp. 2d 671, 678 (N.D. W. Va. 2012) ("[A] corporate board of directors is not a legal entity separate and apart from the corporation itself and, thus, should not be named as a separate party. This rule reflects the well-settled principle that the corporate entity does not exist separate from its board of directors." (internal citations and quotation marks omitted)).

Defendants argue that as an internal structure, a board of directors that cannot be sued cannot receive service of process, especially where there is no registered agent upon which process can be served. (Defs.' Br. 12-13; Defs.' Reply 15-16.) Cf. 13 V.I.C. § 32(2) (stating that a corporation has the special power to "sue and be sued by its corporate name"); 13 V.I.C. § 51 ("Every corporation shall . . . have a resident agent . . . on whom service of legal process against the corporation can be made."). This Court agrees.

Because personal service cannot be properly effected on the WICO Board pursuant to Fed. R. Civ. P. 4, and Plaintiff has failed to meet this burden of proof by asserting no legal authority to the contrary, Plaintiff's complaint is dismissed against the WICO Board pursuant to Rule 12(b)(4) and 12(b)(5). See Fed. R. Civ. P. 12(b)(4), (5).

**CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss and Motion to Quash are **GRANTED**.

s/Susan D. Wigenton
**Susan D. Wigenton, U.S.D.J.**

Cc: United States Magistrate Judge Ruth Miller

16